SAMUEL B. UPHAM AND OTHERS, ASSIGNEES OF GEORGE F. PADDOCK AND MERRITT ANDREWS, BANKRUPTS, APPELLANTS, v. OSCAR PADDOCK AND OTHERS, RESPONDENTS.

*Collector's bond — sureties upon — rights of.*

A bank collected the rents of certain real estate in Watertown as the agent of the owners, George F. Paddock, Oscar Paddock and Edwin L. Paddock, from December 8, 1874, to October 29, 1875. On the former date Blood, Sawyer and George F. Paddock signed as sureties the bond of one Rogers, as collector of the town of Watertown, which bond was duly filed. Rogers failed to pay over the sum of $11,348.68 of the taxes collected by him, but deposited it with a firm of bankers, of which George F. Paddock was a member, which firm converted the money to its own use and then became bankrupt. On October 29, 1875, Paddock's interest in the real estate was sold under a judgment recovered in an action brought by the supervisors upon the bond, the proceeds thereof being insufficient to pay the amount of the judgment for which the other sureties were liable. This judgment directed that the real property of Paddock should be first sold thereunder, before resorting to the property of his co-obligors

In an action by the assignees in bankruptcy of the firm to recover from the bank the bankrupts' interest in the rents collected by it, the other sureties claimed that as between them and Paddock, the latter was primarily liable for the moneys converted by his firm, and that they could avail themselves, in equity, of the lien of the bond on his real estate; and that he being insolvent, and his real estate being inadequate security, they could reach the rents by means of a receiver, in the same manner that a mortgagee could under like circumstances. *Held,* that this claim could not be sustained and that the assignee was entitled to the money.

*Semble,* that the lien created by the filing of a collector's bond is analogous to that of a judgment creditor, and not to that of a mortgagee; and the owner of the property has a right to redeem and a right to the possession, and to receive the rents and profits after a sale thereunder, the same as after a sale under an ordinary judgment.

APPEAL from a judgment in favor of the defendants, entered on the decision of a judge at the Jefferson Special Term.

*D. O'Brien*, for the appellants.

*Starbuck & Sawyer*, for the respondents, Richardson, Blood and Sawyer.

*F. W. Hubbard*, for the respondents, Paddock and the First National Bank of Watertown.

SMITH, J.:

The plaintiffs sue as assignees in bankruptcy of George F. Paddock, an adjudged bankrupt, to recover the share of the bankrupt in the rents of certain real estate owned by him and the defendants, Oscar Paddock and Edwin L. Paddock, as tenants in common. The rents accrued from 8th December, 1874, to 29th October, 1875, and were collected by the defendant, the First National Bank of Watertown, as the agent of the owners of the real estate, and are now held by the bank. The bankrupt's share of the rents held by the bank amounts to the sum of $2,937.30. The bank makes no claim to the money in its own right, but alleges in its answer that the defendants, Blood and Sawyer, have demanded the same of the bank, and that the bank is ready and willing to pay the same as the court shall order. Upon this state of facts it is obvious that the plaintiffs, as assignees, have the legal title to the money, and the right to recover the same from the bank as a part of the assets of the bankrupt, unless some of the other defendants have a superior right to it.

The only defendants who set up an adverse claim to the money are Blood and Sawyer. Their claim is based upon the following state of facts : On 8th December, 1874, Blood, Sawyer and George F. Paddock (the bankrupt), as sureties, with Jeremy W. Rogers as principal, who was the collector of the town of Watertown, executed the bond of said Rogers, as collector, to the supervisor of the town, and the same was duly filed and became a lien upon the real estate of the obligors. Rogers failed to pay over the sum of $11,348.68 of the taxes collected by him, but deposited it with George F. Paddock & Co., bankers, a firm consisting of the said George F. Paddock and Merritt Andrews, which firm converted the money and afterwards became bankrupt. The supervisor sued the bond and recovered a judgment against all the obligors, which directed that the real estate of Paddock should be first sold to satisfy the judgment before resorting to the property of the other sureties. On 29th October, 1875, the real estate of Paddock was sold, being the property from which the rents in controversy arose and the avails were insufficient to pay the judgment by the sum of $3,909.16, for which the other securities are liable. The ground upon which the claim of Blood and Sawyer was upheld at Special Term, and on which we are asked to affirm the judgment, is that as between them and Pad-

dock, the latter was primarily liable for the tax moneys converted by his firm, and they can avail themselves, in equity, of the lien of the bond on his real estate for their security ; and that he being insolvent, and his real estate being inadequate security, they can reach the rents, by means of a receiver, the same as a mortgagee in like circumstances. By the decree the bank, defendant, was appointed a receiver for that purpose.

We are not prepared to affirm all of these conclusions. Grant that the real estate of the. bankrupt is primarily liable, as between him and the other sureties (Blood and Sawyer), the latter are not in the position of mortgagees. The only lien they have upon the land of the bankrupt is that created by the collector's bond in favor of the supervisor, to whose rights they are perhaps entitled to be subrogated on paying the debt. We do not understand from the findings that they have actually paid. They are liable to pay. But waiving that point, the nature of the lien is to be considered. It is not a lien by mortgage, it is created by statute, and is more nearly analogous to a lien by judgment. The county clerk with whom the bond is filed is required to make an entry of it, in a book to be provided for the purpose in the same manner in which judgments are entered of record. (1 R. S., 346, § 20.)

The statute provides no special mode of enforcing the lien. The only mode, therefore, is by a suit on the bond to recover the amount due from the collector, and judgment being obtained, the real estate which is subject to the lien may be sold by the sheriff upon execution. That being the case, the owner of the land has the same right to redeem as other judgment-debtors whose lands are sold on execution, and in the meantime, and until title is perfected in the purchaser, by the sheriff's deed, the owner of the equity of redemption is entitled to the possession of the property, and to receive the rents and profits as his own. The equitable considerations which induce courts of equity, in their discretion, to permit a mortgagee to collect the rents and profits, through a receiver, *pendente lite*, where the land is inadequate security and the mortgagor is insolvent, have no application to the lien of a judgment-creditor, nor, as it seems to us, to a lien created by the filing of a collector's bond.

But if the reverse of this proposition were true, the defense must fail for another reason. Even a mortgagee has no specific

lien on the rents and profits, in the absence of a special clause to that effect in the mortgage, until a court of equity has determined that it is necessary for his security, and has appointed a receiver to intercept the rents and profits and divert them from the mortgagor. That had not been done in this case when the assignees commenced the present action. No receiver was appointed until the judgment was rendered which is now under review. Assuming, for the present purpose, that the respondents, Blood and Sawyer, are to be regarded, in equity, as mortgagees, the lien which they acquired by the appointment of a receiver, undoubtedly attached to the rents and profits then past due and owing from the tenants, if there were any such, but the respondents could not call on the assignees to refund rents and profits which the tenants had paid over to them or their agent before the receiver was appointed. (*Howell* v. *Ripley*, 10 Paige, 43; *Astor* v. *Turner*, 11 id., 436.) Prior to the commencement of this action the rents in controversy had been paid by the tenants to the bank, and were received and held by the latter as the agent of the owners of the real estate, of which the bankrupt was one. The title of the bankrupt to the real estate, and to such of the rents collected as had accrued at the time of the commencement of the bankruptcy proceedings, and to such as were thereafter to accrue, passed to his assignees. As between the bankrupt or his assignees on the one hand, and his co-tenants on the other, there was no dispute as to the amount of his share of the rents. The receipt by the bank of the share of the rents belonging to the estate of the bankrupt was, in law, the receipt of them by the assignees.

The bank held the money for its principals, by whom it was authorized to receive it, and not, as seems to be supposed by the respondents' counsel, as a trustee for the benefit of outsiders who might ultimately lay claim to the fund, but who had no valid claim to it, in law or equity, when the bank refused to pay it to the plaintiffs, and when the plaintiffs commenced suit to recover it. Not only, therefore, had the plaintiffs the legal title to the rents in question, but they had collected them from the tenants before the respondents procured the appointment of a receiver. This suit was necessary, simply because their agent, the bank, refused to pay over the money which it had collected for them. The bank was the only necessary defendant. Indeed, there is nothing in the com-

plaint showing that at the time of the commencement of the action the plaintiffs had any controversy with the defendants, Richardson, Blood and Sawyer, and it alleged no ground whatever for making them parties. And the co-tenants of the bankrupt, Edwin and Oscar Paddock, who were made defendants, did not answer the complaint. It would seem, too, from the stipulation which is made a part of the case, that Richardson, Blood and Sawyer were not made defendants originally, but were permitted by the plaintiffs to come in after the suit was commenced, and set up their claims by answer. That is of no consequence, however, except as showing that the only object of the suit, originally, was to compel the bank to pay the plaintiffs the money which it had received from them as their agents.

These views lead to the conclusion that the judgment should be reversed ; and, as the facts are undisputed, judgment should be ordered for the plaintiffs for the relief specifically demanded in the complaint, with costs and disbursements of the action and appeal, against the respondents, Blood, Sawyer, and the bank.

MULLIN, P. J., and TALCOTT, J., concurred.

Ordered accordingly.